UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DARYL K. THOMAS,                  :        Hon. Joseph H. Rodriguez

        Plaintiff,        :        Civil Action No. 07-4720

        v.                :        MEMORANDUM OPINION
                                    & ORDER
THE ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY, et al.,  :

        Defendants.       :

        This matter is before the Court on a motions for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendants Edward Fallon [54] and the Gloucester County Prosecutor's Office, the Gloucester County Board of Chosen Freeholders, the Gloucester County Sheriff's Department, and Detectives Barrett Johnson, William Perna, Gus Giovanazzi, Donald Gentile, Jay Loomis, and Thomas Atkinson [55].  The civil rights claim alleging excessive force, denial of timely medical treatment, and failure to train and supervise was originally filed by Plaintiff Daryl K. Thomas in the Superior Court of New Jersey, Law Division, Cumberland County, but was timely removed to this Court.  Oral argument on the motions was heard on the record January 28, 2010 and that record is incorporated here.  For the reasons discussed that day, and those below, Defendant Fallon's motion will be granted and the Gloucester County Defendants' motion for summary judgment will be granted in part and denied in part.

## Background

        The gravamen of the Complaint alleges that Plaintiff was subjected to excessive force in his home on or about February 2, 2006 in the course of his arrest by a fugitive task force on an outstanding warrant for failure to appear in Gloucester County.

According to Plaintiff, the Defendants knocked on his door at approximately 8:00 a.m., just after Plaintiff had let his dog into the house.  (Pl. Dep., page 65.)[1]  He did not answer the door because he was not dressed.  (Id.)  Rather, he "had to get [himself] together before [he] opened the door.  So this was a while.  It was like a standoff type thing.  The cops kept knocking in the front and the back door."  (Id.)  At some point, Plaintiff barricaded the back kitchen door with the refrigerator.  (Pl. Dep., pages 67-68, 102.)  He "eventually" went upstairs, got dressed, and woke up his girlfriend, alerting her that the police were there for him.  (Pl. Dep., pages 65-66.)  Plaintiff heard the police advise him to "do something with the dog or we're going to shoot the dog," so he put the dog in an upstairs bedroom. (Pl. Dep., page 66.)  Plaintiff's girlfriend went downstairs and reported that the police told her to open the door.  (Id.)  Plaintiff then descended the stairs with his hands raised, at which time the Defendants broke down the door.  (Pl. Dep., page 66-67.)

Upon entry, a police officer called the "Zepper" punched Plaintiff in the mouth and knocked out Plaintiff's tooth when he had his hands up.  (Pl. Dep., pages 99, 109.)  Plaintiff stated that Defendants "about three or four or five of them proceeded to put the cuffs on me and then after that, they just proceeded to beat—they beat the daylights out of me while I was cuffed, while I was handcuffed."  (Pl. Dep., page 111.)

Plaintiff was taken to a firehouse staging area prior to booking, where he "kept

---

[1]Defendant Fallon testified at his deposition, "As I proceeded up the sidewalk to the front door, the front door opened, he came out, Daryl Thomas, came out with a dog. And at that time I told him he was under arrest, and he slammed the door shut before I could even probably finish my sentence, slammed the door shut, pulled the dog in, locked it." (Fallon Dep., p. 24.)

complaining about how [the police] beat [him] and [five or six officers] told [him] shut the F up or they [were] going to kill [him] quote-unquote."  (Pl. Dep., page 122, 124.) They also instructed the paramedics present not to give Plaintiff medical treatment; the paramedics did give Plaintiff gauze to put in his mouth for the bleeding.  (Pl. Dep., page 124.)

At about 3:30 p.m., Plaintiff was taken to Kennedy Memorial Hospital.  (Pl. Dep., page 126, 138.)  His Express Care Assessment Record from February 2, 2006 states that his teeth were broken during arrest and that he complained of acute and constant pain in his right thigh, teeth, and head.  He has since developed back pain for which he has sought medical treatment.

In addition to his own deposition testimony, Plaintiff has submitted an affidavit in opposition to the motions which states:

> [A]fter the officers had broken in, I was coming down the stairs, with my hands up ready to surrender. The officer who identified himself as the Zepper, punched me in my face which knocked out my gold tooth. I was then thrown to the floor from the steps and handcuffed.
> At the time I was punched in the face, I had my hands up and offered absolutely no resistance and was making it obvious that I had surrendered.
> The officer that punched me in the face did so deliberately to hurt me when I was offering no resistance. I can identify this officer at the time of trial or from pictures. Since I have been incarcerated since that time, I have been unable to attend any of the depositions to identify the people in person.
> After I was on the ground and handcuffed, **ALL** of the officers who were in the house during the process of arresting me, then proceeded to punch and kick me. In fact, at one time, they were holding my leg and the other officers were taking turns kicking my right leg.
> In fact, I am certain that the officers who also arrested Evangeline Davis, after subduing her, then also came over and participated in hitting and punching me.
> We had to wait until Evangeline's father showed up to the house to take care of the kids, it seemed like there was approximately 10 or 15

3

minutes where I was laying on the floor waiting until Evangeline's dad arrived. During that time the officers would come by and put their knee in my face and back exerting a great deal of pressure on my head and back when I was handcuffed and on the ground.

It will be my testimony that, at the time I was punched in the face, I was offering no resistance. It will further be my testimony that the officers who came into the house assaulted me.

It is my testimony that all officers named in the Complaint all participated in the assault and hit me once while I was handcuffed and offering no resistance.

Additionally, it is my testimony that I was injured as a result of this incident. I initially went to the hospital where I was treated for the injury to my face and my right leg.

Attached to my certification are my hospital records. After I left the hospital, my leg blew up and was severely swollen.

Additionally I developed back pain that resulted in me being sent to St. Francis Hospital to be examined by an orthopedic surgeon. At that time, he told me I injured my back.

Since that time, I've been treated in the prison system for my back and have constant pain in my back radiating down to my legs.

Attached to my certification are the records from the various prisons that indicate I have had continuous back pain after this incident. Prior to this matter, I had no back pain.

Contrary to the statements in this affidavit, at his deposition, Plaintiff testified as

follows:

Q. Okay. At the same point that some were beating Evangelina, did those officers stop what they were doing and go to you or did those officers continue what they were doing?
A. No, they – they handcuffed her and a couple held her down, then they started with me, beating on me.
Q. So they continued what they were doing and you just came down the steps or did they -
A. No, I came down the steps and they punched me right in my mouth and broke my teeth out.
Q. Was it the same officers?
A. I don't know.
Q. So did they –
A. Simultaneously, he couldn't be punching me and holding her down.
Q. So were there different officers that where taking care of Evangelina than are taking –
A. They had to be.

4

(Pl. Dep., page 189.)  In addition, when asked whether he could identify any of the people who were involved in his beating he answered, "[t]hey had things on their faces, man."  (Pl. Dep., page 111.)

Defendant Fallon's February 12, 2006 Investigation Report reveals that the Defendants were attempting to execute a knock and announce warrant at Plaintiff's house, but Plaintiff did not open the door for approximately thirty minutes.  Upon knocking down the front door, Defendant Fallon entered first and subdued and subsequently arrested Plaintiff's girlfriend while other task force members subdued and arrested Plaintiff.  Both were described as refusing to comply with police orders.  Fallon reported that Plaintiff "attempted to flee from the residence through the front door."  Fallon's version of the arrest was that Plaintiff "continued to fight with the [two] detectives and he was physically taken to the floor, hitting his mouth during the struggle and losing a tooth."  (Glogoff Cert., Ex. E.)

Plaintiff has conceded that he is not pursuing any tort claims.

## Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role

6

is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Analysis

Plaintiff's Constitutional claims are governed by 42 U.S.C. § 1983.  A plaintiff may have a cause of action under 42 U.S.C. § 1983  for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

Local government units, like Defendants the Gloucester County Prosecutor's Office, the Gloucester County Board of Chosen Freeholders, and the Gloucester County Sheriff's Office, are not liable under section 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.

Department of Social Services of New York, 436 U.S. 658, 690-91, 694 (1978)

(municipal liability attaches only "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury" complained of); Natale v. Camden County

Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  Rather, "[a] defendant in a

civil rights action must have personal involvement in the alleged wrongs, liability cannot

be predicated solely on the operation of respondeat superior.  Personal involvement can

be shown through allegations of personal direction or of actual knowledge and

acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997);

Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Thus, to establish municipal liability under section 1983, "a plaintiff must show

that an official who has the power to make policy is responsible for either the affirmative

proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon,

915 F.2d 845, 850 (3d Cir. 1990) (quoted in Blanche Rd. Corp. v. Bensalem Twp., 57

F.3d 253, 269 n. 16 (3d Cir.), cert. denied, 516 U.S. 915 (1995) and quoted in Woodwind

Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000)).  A plaintiff must

demonstrate that, through its deliberate conduct, the municipality was the moving force

behind the plaintiff's injury.  Monell, 436 U.S. at 689.

Plaintiff has consented to the entry of summary judgment against the Gloucester

County Prosecutor's Office, the Gloucester County Board of Chosen Freeholders, and the

Gloucester County Sheriff's Department.  He opposes the entry of summary judgment

against the individual Defendants, who have moved for summary judgment on the

grounds of qualified immunity.

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The

9

general touchstone is whether the conduct of the official was reasonable at the time it occurred.).  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant.  See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.  Graham v. Conner, 490 U.S. 386, 397 (1989).  While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id.  Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396).  See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

Defendant Fallon testified that Plaintiff was "aggressively resisting arrest" by Defendants Gentile and Giovinazzi, and "trying to get out of the front door, (Fallon Dep., page 30), but Fallon did not notice anyone strike him, (Id. at page 33).  Defendant Gentile testified that no one hit Plaintiff in any way once he was subdued, and they did not even realize Plaintiff had lost a tooth until someone pointed it out.  (Gentile Dep., page 38.)  A reasonable factfinder, accepting Plaintiff's testimony and discrediting the officers' accounts of their conduct during the course of the arrest, could conclude that Plaintiff did not pose a serious threat to the safety of the officers and that the arresting

10

officers' use of force to subdue him was unreasonable under the circumstances.  Thus, there are genuine issues of material fact as to whether the officers violated a clearly established constitutional right.

Next, however, Defendant Fallon argues that he could not have used excessive force on Plaintiff because he was not involved in Plaintiff's arrest.  (See Fallon Dep., page 22; Giovinazzi Dep., pages 23-24; Gentile Dep., page 41.)  Similarly, by the time Defendant Perna arrived in the living room of the house, "everybody was under arrest and handcuffed."  (Perna Dep., page 16.)  By the time Johnson "got around the front, Mr. Thomas was already in handcuffs and on the ground."  (Johnson Dep., page 9.)  Although Atkinson gained entry to the basement, he could not access the first floor of the house because the door was barricaded.  (Atkinson Dep., page 49.)  Indeed, it appears Johnson, Perna, and Atkinson were on perimeter containment and so were not involved with the arrest of the occupants of the house.  Summary judgment will be granted in their favor, and in favor of Defendant Fallon.

Defendant Loomis testified that by the time Defendant he gained entry to the house through a rear window, Plaintiff "was in a struggle" with Gentile after "he either tripped or lunged at Officer Gentile."  (Loomis Dep., page 49.)  Nonetheless, Giovinazzi testified that Plaintiff was being handcuffed by Gentile and Loomis, and that he did not help subdue Plaintiff, but did help "to assist" when "it was over."  (Giovinazzi Dep., pages 17, 19.)  Because there are genuine issues of material fact regarding the involvement of Defendants Giovinazzi, Gentile, and Loomis, summary judgment as to those individuals will be denied.

Specifically, Plaintiff has testified that "the first guy punched me in the face, in my mouth, that broke my teeth out. The other guy grabbed me. So this is the other one, he grabbed me and threw me down on the ground. They . . . proceeded to put the cuffs on me and then after that, they just proceeded to beat -- they beat the daylights out of me while I was cuffed, while I was handcuffed." (Pl. Dep., pages 110-111.) The disputed facts here are material to determining whether a reasonable official would have considered the force used reasonable and necessary, and such a dispute prevents this Court from entering summary judgment based on qualified immunity. In an analogous case, the Third Circuit recently has reiterated that "[n]o reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law." <u>Giles v. Kearney</u>, 571 F.3d 318, 327 (3d Cir. 2009).

The Court has considered the argument that Plaintiff has produced no expert testimony relating his claimed medical conditions to the arrest.[2]  As discussed during oral argument, however, this is a matter for a credibility determination by a jury.

---

[2]Defendant Fallon has argued that Plaintiff's claims of injury should be dismissed because he has not produced an expert to causally relate his dental condition or back pain to the February 2, 2006, incident. Plaintiff submitted records from Kennedy Memorial Hospital in which medical personnel diagnosed him as having tooth decay. He also underwent multiple extraction of his teeth on December 4, 2007, at University Hospital after being diagnosed with periodontal disease. Fallon argues that Plaintiff had a long history of drug abuse (Pl. Dep., pages 44, 190), so given Plaintiff's diagnosis of periodontal disease and past drug history, expert testimony is required to link the necessity of his teeth extraction procedure to the February 2006 arrest. Regarding plaintiff's complaints of injury to his neck, hip and back, Fallon argues that the objective tests reveal only degenerative disease to his cervical spine and nerve impingement in his low back. Plaintiff was involved in prior motor vehicle accidents in which he alleged injury to his neck and back. (Pl. Dep., pages 37-43.) Also, in 1998, he was beaten with a baseball bat to his head, legs, back, front and face. (Pl. Dep., page 44-45.)

**Conclusion**

For the foregoing reasons,

IT IS ORDERED on this 8th day of February, 2010 that the motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendant Edward Fallon [54] is hereby <u>GRANTED</u>.

IT IS FURTHER ORDERED that the motion for summary judgment filed by the Gloucester County Prosecutor's Office, the Gloucester County Board of Chosen Freeholders, the Gloucester County Sheriff's Department, and Detectives Barrett Johnson, William Perna, Gus Giovanazzi, Donald Gentile, Jay Loomis, and Thomas Atkinson [55] is hereby <u>GRANTED IN PART</u> and <u>DENIED IN PART</u> as discussed on the record of January 28, 2010 and as follows:

Summary judgment is granted in favor of the Gloucester County Prosecutor's Office, the Gloucester County Board of Chosen Freeholders, the Gloucester County Sheriff's Department, Detectives Barrett Johnson, William Perna, and Thomas Atkinson, but is denied as to the excessive force claims against Gus Giovanazzi, Donald Gentile, and Jay Loomis.

 /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ
U.S.D.J.

13